## Thomas P. Keyes v. The People, etc.

100    163
a197s  638

1.   CRIMINAL PROCEDURE—*Sufficiency of Averments in an Indictment for Selling Mortgaged Property.*—In an indictment for selling mortgaged property, to aver that the mortgage was valid is to aver a legal conclusion.   An averment that the seller well knew that the prop-

erty in question was not then and there free and clear from all liens and incumbrances, but that a certain corporation, naming it, organized and existing under and by virtue of the laws of the State of Illinois, then and there held a certain chattel mortgage on said property to secure the sum of two hundred dollars in money, is an averment, sufficient as a basis for proof of a valid chattel mortgage held by such corporation.

2. CRIMINAL LAW—*Care and Caution—False Pretenses.*—Whether a person who purchases personal property, relying upon false pretenses of the vendor, exercised reasonable caution, is a question of fact for the jury to decide.

**Indictment,** for selling mortgaged property. Error to the Criminal Court of Cook County; the Hon. FRANK BAKER, Judge, presiding. Heard in this court at the March term, 1901. Affirmed. Opinion filed February 13, 1902.

**Statement.**—This is a writ of error seeking a reversal of the conviction of plaintiff in error (hereinafter called plaintiff) for obtaining money by means of false pretenses. The indictment is stated in substance in the brief of counsel for plaintiff in error, as follows:

The indictment was returned at the May, 1900, term, and charged that Thomas P. Keyes, on the 21st day of February, 1900, in the county aforesaid, did unlawfully, etc., falsely pretend to one Katherine Moran that certain chattels, to wit, one counter, seven tables, twenty chairs, ten stools, one coffee mill, one show case, one gas range, one lot of kitchen and dining room utensils, consisting of cooking utensils, knives, forks, dishes, one ice-box, one meat grinder, a lot of linenware, one lot of silverware, one lot of glassware, then and there situated at 38–40 Pacific avenue in the city of Chicago, then and there situate, in which he, the said Thomas P. Keyes, then and there sold to Katherine E. Moran a one-half interest, were then and there clear from all liens and incumbrances, and that the restaurant, which was then and there being conducted at said numbers 38 and 40 Pacific avenue in the name of the Model Restaurant, in which the said Thomas P. Keyes then and there sold a one-half interest to said Katherine Moran, was then and there taking in from $22 to $25 per day, which said false pretenses and false tokens, the same then and there being false pretenses and false tokens, were then and there made by the

said Thomas P. Keyes, with the design to induce Katherine E. Moran to pay him the sum of $250; and that she, relying upon the false pretenses and believing them to be true, did pay over, etc.; whereas, in truth and in fact, said chattels were not then and there clear from all liens and incumbrances, but that the Vienna Model Bakery Company, a corporation, then and there had and held a chattel mortgage on the chattels to secure the sum of $200 in money, as he, the said Thomas P. Keyes, then well knew, and whereas, in truth and in fact, said restaurant business was not then and there taking in the sum of $22 to $25 per day, but that the same was then and there taking in at the rate of less than $10 per day, as he, the said Thomas P. Keyes, well knew.

A jury was waived by the parties, and the cause was tried by the court, without a jury.

The prosecuting witness, Katherine E. Moran, testified that in the evening of February 19th and forenoon of February 20, 1900, she saw an advertisement in regard to a restaurant in the city of Chicago; that at the last date, in the forenoon, she called at the office of plaintiff in error and inquired about the restaurant; that he told her it was at numbers 38 and 40 Pacific avenue, in Chicago; that the location was good and the restaurant in good running order; that witness told him that she had looked at another place, but found it was mortgaged, and that she wanted nothing to do with mortgaged property, and plaintiff told her that the place was clear and all right; that a mortgage was a nuisance, and that the place took in from $23 to $25 per day; that he asked $250 for a half-interest in the place, and that witness, after seeing the restaurant and its contents, and relying on the said statements of plaintiff, on February 21, 1900, paid to him $250 for a half interest in the restaurant and took from him a bill of sale of the same, and entered into a contract of partnership with plaintiff. The bill of sale and the partnership contract were introduced in evidence. By the terms of the partnership agreement the witness was to have charge of the cash and the running of the restaurant, and she testified

that February 21st, about eleven o'clock in the forenoon, she went to the restaurant and took charge of it, and that, after she had been there about an hour, a man called and asked her if that was the place belonging to the Vienna Bakery Company; that she told him not that she knew of, and whose place it was, and that she had just bought a half interest in it from Keyes,. when the man told her there was a mortgage on the place, and that she had better see Keyes and get back her money; that, in the afternoon of the same day, she saw Keyes, told him there was something wrong, and asked for her money, and Keyes said to her, "They are trying to represent that there is a mortgage, but there is no mortgage. They can never maintain a mortgage at all. There isn't any mortgage at all on it in the wide world. You need not worry." The witness further testified that she remained at the restaurant from February 21st till March 19, 1900, and there was taken in in the business during that time only from $6 to $13.10 per day, the last amount being taken in February 22d. Witness says that during said time she told plaintiff that she was afraid of the mortgage, and asked him to either refund her money or pay up the mortgage, and that he refused to do either.

The chattel mortgage introduced in evidence is dated August 29, 1899, and is from Louis Simon, mortgagor, to the Vienna Model Bakery, mortgagee. It conveys the Pontiac Restaurant and Lunch Room, number 362 Dearborn street, and a long list of fixtures and chattels, such as are used in restaurants, and is conditioned for the payment by the mortgagor to the mortgagee of the sum of $200, evidenced by the mortgagor's eight promissory notes, each for the sum of $25, of even date with the mortgage, and due, respectively, in 1, 2, 3, 4, 5, 6, 7 and 8 months after date. The mortgage, by certificates thereto attached, purports to have been acknowledged before a justice of the peace August 30, 1899, and to have been recorded in the recorder's office of Cook county August 31, 1899. The only objection made to its introduction in evidence was, that it did not describe the property as it is described in the indictment.

Keyes v. The People.

Counsel for plaintiff in error, in their argument, make the following statement, which we find to be substantially true:

"On the trial it appeared that a man by the name of Louis Simon had owned some restaurant property and conducted a restaurant in connection therewith at 362 Dearborn street, Chicago, Illinois. While located there he executed a chattel mortgage in question in this case, and thereafter sold the property to Thomas Walker, who, in turn, sold it to John Golding, who, in turn, sold it to plaintiff in error. About September, 1899, the property, while owned and possessed by Louis Simon, was removed from 362 Dearborn street to Nos. 38–40 Pacific avenue. While in the possession of Thomas Golding, the Vienna Model Bakery Company attempted to foreclose upon the mortgage, and did take possession, whereupon Golding replevied; and while the replevin suit was pending, or thereafter, plaintiff in error secured the ownership of the restaurant and property."

That the property in the restaurant at numbers 38 and 40 Pacific avenue was the same property which was formerly at number 362 Dearborn street, and which was mortgaged as above stated, was testified by Reicherdt, secretary, treasurer and manager of the Vienna Model Bakery, J. S. Bradley and Elmer Schmeck.

McEWEN & WEISSENBACH, attorneys for plaintiff in error.

CHARLES S. DENEEN, State's Attorney, and FRANK W. BLAIR, Assistant State's Attorney, for defendant in error.

MR. JUSTICE ADAMS delivered the opinion of the court.

The contentions of counsel for plaintiff are as follows:

1. That the indictment is bad in not averring that the chattel mortgage was a valid lien.

2. There is a variance between the description in the indictment of the property averred to have been purchased by the prosecuting witness, Mrs. Moran, and the proof.

3. No payee of the notes, payment of which the mortgage purports to secure, is mentioned in the mortgage.

4. The mortgage was not valid as to Keyes or any person subsequent to Simon.

5. The falsity of the alleged representation of the receipts of the restaurant business was not sufficiently proven.

6. A person of ordinary prudence would not have been deceived by the representation that the property was free from incumbrances.

The averment in the indictment is:

" Whereas, in truth and in fact, as he, the said Thomas P. Keyes, then well knew, the said chattels were not then and there clear from all liens and incumbrances, but that the Vienna Model Bakery, a corporation organized and existing under and by virtue of the laws of the State of Illinois, then and there had and held a certain chattel mortgage on said chattels, to secure the sum of two hundred dollars in money," etc.

This averment is certainly a sufficient basis for proof of a valid chattel mortgage owned and held by the Vienna Model Bakery. To aver that the mortgage was valid, would be to aver a legal conclusion, which is not in accordance with the rules of pleading, either civil or criminal. It is not contended that the chattel mortgage in evidence was not valid when executed. We can not sustain plaintiff's second contention. Most, if not all the chattels mentioned in the indictment are described in the mortgage. There are some slight differences between the indictment and the mortgage in the names of some articles, both referring, evidently, to the same articles. The third contention is untenable. The payee of the notes is substantially stated in the mortgage. The Vienna Model Bakery is the mortgagee, and the language of the mortgage is: " Provided, nevertheless, that if the said mortgagor, his executors or administrators, shall well and truly pay unto said mortgagee, or its assigns, the sum of two hundred dollars, evidenced by his eight promissory notes of even date herewith," etc. This language we think makes it sufficiently clear that the Vienna Model Bakery was the holder and owner of the notes. The mortgage is not abstracted, and therefore we have been compelled to inspect the written transcript. The fourth contention of counsel is that there is evidence tend-

ing to show the consent of Reicherdt, the manager of the
Vienna Model Bakery, to the sale of the mortgaged prop-
erty by Simon to Walker, and that he knew of the sale
by Walker to Golding, and therefore the mortgage was
invalid or ineffective as to plaintiff in error, citing Brandt
v. Daniels, 45 Ill. 453.   We do not regard that case in point.
In that case the purchaser of the mortgaged property, who,
by the decision of the court, was protected against a prior
mortgage, purchased without notice of the mortgage, and
there were circumstances which warranted the court in
holding that the mortgagee had waived his right under
the mortgage.   In the present case it affirmatively appears
that Keyes knew of the mortgage and promised to pay it,
and there is nothing indicating waiver by the mortgagee.
Reicherdt, the bakery company's manager, testified that
Keyes told him that he, Keyes, would settle the mortgage
matter with him just as soon as he could get rid of Mrs.
Moran.   This evidence is uncontradicted.   It is apparent
from the record, which is not as fully abstracted as it should
be, that about the time Mrs. Moran quit the restaurant,
there was an attempt made by the Vienna Model Bakery
to foreclose the mortgage.   It is contended that the evi-
dence of Mrs. Moran is insufficient to warrant the finding
that the representations of plaintiff in error as to the
receipts of the restaurant business prior to February 21,
1900, were false.   Mrs. Moran's testimony on the subject is
not fully abstracted.   Her testimony as to receipts after
she took charge of the restaurant was as follows: February,
1900, 21st, $9.15; 22d, $13.10; 23d, $9.65; 24th, $10; 26th,
$12.10; 27th, $7.45; 28th, $8; March, 1900, 1st, $8.20; 2d,
$6.95; 3d, $5.40.   This evidence was not objected to, and
it is uncontradicted.   It was for the court to decide as to
the credibility of the witness, Mrs. Moran, who testified
that Keyes told her that the restaurant, before and at the
time of her purchase, was taking in between $22 and $25
per day, and that afterward, the receipts were as above
stated.   Assuming the evidence to be true, we think it
sufficient to warrant the conclusion that the receipts prior

to and about the time of Mrs. Moran's purchase were not as represented by Keyes. It was not in Mrs. Moran's power to prove directly what the actual daily receipts of the business were before she purchased; but it must be presumed that plaintiff in error, who had been conducting the business, knew and could have proved what they were. Yet he introduced no evidence on that question, or at all, but permitted the cause to go to the court for decision solely on the evidence for the people. But even though the evidence as to the falsity of the representations in respect to the receipts of the business should be deemed insufficient, the conviction can be sustained on the evidence of the falsity of the representation that the property was free from incumbrance. Lastly, it is contended that the conviction can not be sustained, because the prosecuting witness, by the exercise of reasonable caution, might have protected herself; that she should have examined the record. We are of opinion that this contention can not be sustained; that plaintiff in error can not defend on the ground that had the prosecuting witness examined the public records, she would have discovered that he was lying. Thomas v. The People, 113 Ill. 531; State v. Hill, 72 Me. 238.

In 2 Bishop's New Crim. Law, 8th Ed., Sec. 464, the author writes:

" If the prosecutor believed the pretense, and parted with his property relying on it, there is no need he should have acted therein with ordinary care and caution. This is plainly the just doctrine, though cases may be found in the books hardly sustaining it."

In note 4 to the section cited, the author quotes the following from an opinion of Erle, J., in Temple and Mew's Crown Cases, 279:

" It was once thought that the law was only for the protection of the strong and prudent. That notion has ceased to prevail."

See, also, 2 Wharton's Crim. Law, 9th Ed., Sec. 1188, in which the following occurs:

" It is submitted, however, that whether the prosecutor had the means of detection at hand, or whether the pre-

tenses were of such a character as to impose upon him, are questions of fact to be left to the jury, as they must necessarily vary with the particular case. If fraudulent and false pretenses were used, and goods obtained by them, the prosecutor's capacity and opportunities must be considered in determining his culpability. It must also be remembered that the statute assumes some defect in caution, for, if there were perfect caution, no false pretenses could take effect." The section concludes thus: "The simple and credulous are as much under the protection of the law as are the astute."

We think the views expressed by the authors referred to, logical, just, and in harmony with the letter and spirit of the statute.

The judgment will be affirmed.